### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ILLINOIS

DIAMOND JONES,

                *Plaintiff*,

     v.

VILLAGE OF RICHTON PARK,

                *Defendant*.

Case No. 1:23-cv-15802

**JURY DEMAND**

## COMPLAINT

### INTRODUCTION

1. On the afternoon of June 24, 2022, Plaintiff Diamond Jones ("Ms. Jones") was at work when a shooting occurred down the street from her home in Richton Park. Her mother, Debrasha Smith, was watching Ms. Jones's two young children at the family's home. The children, who were playing in the backyard, heard the gunfire and ran inside to alert Ms. Smith. After ensuring the children were safe, Ms. Smith ran outside and called the Richton Park Police Department, who informed her they had already received calls about the shooting and that emergency responders were on their way. When officers and emergency services arrived at the scene, Ms. Smith gave a brief statement to the police. The next day, Ms. Jones and her family learned of online threats directed at their address in retaliation for their cooperation with the police. They called the Richton Park Police Department to report the threats and asked for help. Those threats became real on June 27, 2022, when someone fired shots at Ms. Jones's home while her mother and children were inside. The family called the police for help a third time.

2. Less than two weeks later, Ms. Jones learned that these interactions with the Richton Park Police Department amounted to a purported violation of the Village's Crime-Free

Housing Ordinance. This local law gives the Village the power to require that a landlord evict a renter for alleged criminal activity or "causing an unreasonably high number of calls for police service."

3. The Village did not notify Ms. Jones of the enforcement action or offer her an opportunity to dispute the basis of its decision. In fact, Ms. Jones first learned of the Village's enforcement action against her when she saw an eviction notice from her landlord placed on the door of her home on July 5, 2022, which indicated that she had ten days to move out of her home of almost four years.

4. When Ms. Jones called and visited the Police Department to understand why she—a gun violence victim who cooperated with the police—was being targeted under the Village's Crime-Free Housing Ordinance, the Police Department simply handed her a copy of the service call log for the area around her address.

5. "Crime-free" ordinances ("CFOs") are part of a legacy of local laws that communities use to police who can be part of them. Enacted with the promise of promoting public safety, in practice, CFOs do little to make communities safer and criminalize those in need of emergency assistance, like survivors of gender-based violence, people with disabilities, and crime victims. This not only violates renters' freedom of speech, but also makes it less likely that individuals will contact the police to seek help. And while the consequences of a violation are substantial, CFOs rarely include procedural protections for renters.

6. On information and belief, Richton Park enforces its Crime-Free Housing Ordinance based on 9-1-1 call logs without training staff on the Ordinance, issuing formal notices to impacted renters, or providing an opportunity for landlords or renters to dispute the enforcement action.

7.     The Village's actions had a significant impact on Ms. Jones and her family.  Facing an eviction, she was forced to leave her home, her community, and the support system she had built for her family in Richton Park, enduring significant financial and emotional cost.

8.     Ms. Jones now brings this lawsuit against the Village of Richton Park pursuant to the First and Fourteenth Amendments to the U.S. Constitution to redress the harm that she suffered as a direct result of the Village's actions and to ensure that Richton Park's Crime-Free Housing Ordinance is declared unconstitutional.

## JURISDICTION AND VENUE

9.     Plaintiff Diamond Jones brings this civil rights lawsuit under the U.S. Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Declaratory Judgment Act, 28 U.S.C. § 2201.

10.     Plaintiff seeks damages and declaratory relief declaring that enforcement of Richton Park's Crime-Free Housing Ordinance, Richton Park, Illinois Municipal Code 1467.12 et seq. (the "Ordinance") violates the First and Fourteenth Amendments.

11.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343, 2201, and 2202 and 42 U.S.C. § 1983.

12.     Venue lies in this Court under 28 U.S.C. § 1391.

## PARTIES

13.     Plaintiff Diamond Jones is a citizen of the United States and a resident of Cook County, Illinois.

14.     Defendant Village of Richton Park, Illinois ("Richton Park" or the "Village") is a municipal entity organized under the constitution and laws of the State of Illinois. Defendant is located at 4455 Sauk Trail, Richton Park, Illinois.

## FACTUAL ALLEGATIONS

### A.    Background on "Crime-Free" Ordinances

15.    So-called "crime-free" ordinances operate by identifying activities by renters that trigger a violation and imposing fines and penalties against rental property owners who fail to evict a renter found to have violated the ordinance.  Many CFOs require rental property owners to register with the municipality and stipulate that all residential lease agreements executed in the municipality include a "crime-free" addendum outlining the provisions of the ordinance.

16.    The threshold for CFO violations is low—triggers typically include arrests, alleged criminal activity, and calls for police service—and though the consequences for renters found in violation are significant, they are afforded few if any procedural protections. Indeed, many municipalities identify violations and pursue enforcement actions without ever providing the impacted renter with any notice or opportunity to be heard.

17.    The protections that renters are afforded under the Illinois Eviction Act, 735 ILCS 5/101 et seq., are insufficient to address a lack of due process in CFO enforcement.  When a municipality requires that a landlord initiate an eviction, it is not a party to the resulting eviction action, and the Illinois Eviction Act does not impose any notice or hearing requirements on CFO proceedings.

18.    Moreover, for several reasons, many renters simply move in response to an eviction notice. For one, the mere filing of the eviction lawsuit can have far-reaching impacts on a renter's credit and ability to access housing in the future. Two, most renters facing eviction lawsuits are forced to navigate the litigation without representation, making it unlikely that renters impacted by CFO enforcement would be able to effectively dispute an alleged CFO violation in the context of an eviction lawsuit. Three, even if a renter prevails in the eviction case, many landlords engage

tenant screening services or software that relies on outdated, inaccurate, or incomplete eviction records. Often, these records do not specify the outcome of a case.

19.     CFOs are prevalent throughout Illinois and across the country but are increasingly recognized as ineffective and vulnerable to arbitrary and discriminatory enforcement.  Because of their reliance on interactions with law enforcement and calls for emergency services, CFOs can reinforce patterns of regional segregation and disproportionately target people of color, immigrant households, persons with disabilities, and survivors of gender-based violence.[1]

20.     In recognition of the intentional and disproportionate impact that CFOs have on vulnerable populations, in 2015, the State of Illinois prohibited county and municipal governments from penalizing renters or housing providers for renter contact with law enforcement related to domestic or sexual violence or an individual's disability.  65 ILCS 5/1-2-1.5.  Nonetheless, the majority of CFOs in Illinois contain no such exemptions for victims of gender-based violence and people with disabilities.[2]

21.     In addition, for such exemptions to be effective, police calls related to domestic violence and the needs of people with disabilities must be appropriately documented.  In practice, these calls are often recorded as related to other alleged criminal activity, allowing the disproportionate harm to continue.

22.     As a result of advocacy and increased awareness around the impact that CFOs have on survivors of gender-based violence, the U.S. Congress affirmed an individual's right to contact law enforcement for emergency assistance in the most recent reauthorization of the Violence

---

[1] *See, e.g., United States v. City of Hesperia, Calif.*, No. 5:19 cv-02298, Consent Order [ECF No. 103] (C.D. Cal. Dec. 22, 2022); *see generally* Deborah N. Archer, *The New Housing Segregation: The Jim Crow Effects of Crime-Free Housing Ordinances*, 118 MICH. L. REV. 173 (2019); Gretchen Arnold, *From Victim to Offender: How Nuisance Property Laws Affect Battered Women*, J. OF INTERPERSONAL VIOLENCE (2019); Alisha Jarwala & Sejal Shah, *When Disability Is a "Nuisance": How Chronic Nuisance Ordinances Push Residents With Disabilities Out of Their Homes*, 54 Harv. C.R.-C.L. L. Rev. (2019).

[2] *See* Maralea Negron et al., MEASURING SAFETY: GENDER-BASED VIOLENCE IN ILLINOIS 101 (2022).

Against Women Act ("VAWA"). Under 34 U.S.C. § 12495, housing providers, tenants and their guests have the right to seek law enforcement or emergency assistance without penalty, including actual or threatened fines, evictions, or nuisance designations at a property. 34 U.S.C. § 12495(b). This "right to report" is not limited to reporting domestic or sexual violence. *Id.*

23.     Effective October 1, 2022, this new VAWA provision applies to recipients of Community Development Block Grant ("CDBG") funding. The provision stipulates that recipients and subrecipients of CDBG funds must (1) report any law or policy that imposes such penalties based on requests for law enforcement or emergency assistance, or based on criminal activity that occurred at the property, and (2) either certify that they are in compliance with these protections or describe the steps the covered governmental entity will take to come into compliance (or ensure subrecipient compliance) within 180 days. *Id.* § 12495(c). On information and belief, Richton Park is a subrecipient of Cook County's CDBG funding.

24.     Though touted as a public safety tool, mounting evidence shows that CFO enforcement results in violations of renters' constitutional and civil rights, including the right to be free from discrimination, the right to contact law enforcement, and the right to receive due process.

**B.     Richton Park's Ordinance and Required Lease Addendum**

25.     The Village of Richton Park has a "Crime-Free" Ordinance enforced through a mandatory lease addendum. *See* Richton Park Mun. Code 1467.12; 1467.15(a).

26.     Richton Park enacted the Ordinance in 2010 and requires landlords to use and enforce its "Crime-Free Lease Addendum" ("Addendum") at all residential rental properties in Richton Park. *Id.* at 1467.12(a); 1467.15(a).

27.     The Addendum authorizes and requires landlords in Richton Park to evict renters for a broad range of activities, including where anyone associated with a renter household

participates in any alleged criminal activity or "cause[s] an unreasonably high number of calls for police service." *Id.* at 1467.12(c)(1). The Ordinance specifies that offending calls may include, but are not limited to, complaints for noise, barking dogs, stray animals, and "juveniles." *Id.* at 1467.12(c)(1)(D). It only excludes calls related to domestic violence, sexual violence, or disability-related needs, which are exemptions required by Illinois law. *Id.*; *see also* 65 ILCS 5/1-2-1.5 (requiring exemptions for these protected classes).

28.     The Ordinance declares it "unlawful for any landlord to permit any tenant to occupy any residential unit in violation of any provisions of the 'Crime-Free Lease Addendum.'" *Id*. at 1467.15(a).

29.     The Ordinance further declares it a "public nuisance" for any tenant to cause "an unreasonably high number of calls for police service… that when compared to other properties in the Village of Richton Park or similar type, reasonably indicates that activity on the rented premises is adversely affecting the health, safety, welfare, or morals of other persons residing in the area." *Id* at 1467.14(b).

30.     Renters face eviction for any alleged violation of the Ordinance. *Id.* at 1467.12(b) and 1467.15.

31.     Renters have no notice, hearing, or appeal rights under the Ordinance. *See id.* at 1467.12-1467.99.

32.     Richton Park provides no opportunity for a renter to dispute the Village's grounds for enforcing the Ordinance or to explain the reason for a call for services or interaction with emergency services or police. This includes whether the renter is innocent of the allegations, whether the renter is the victim of the alleged activity, or whether the interaction with emergency

services or the offending calls stemmed from gender-based violence, a disability-related need, or another good reason to seek help. *Id.*

33.     The Ordinance and Addendum repeat certain basic renter protections from the Illinois Eviction Act—which apply only to the landlord's eviction action to which the Village is not a party—but do not require the Village to document or present any evidence in support of its allegations *before* compelling a landlord to enforce the Addendum. *Id.*; *see also* 735 ILCS 5/101 et seq. (Illinois Eviction Act).

34.     The Ordinance requires the Village to notify the landlord of an alleged violation and offer an opportunity to meet with the Village representatives before it files an enforcement action against the landlord.  Richton Park Mun. Code at 1467.15(b).

35.     However, on information and belief, Richton Park has implemented no formal notice or hearing procedures and does not offer to meet with landlords before enforcing the ordinance.

36.     After receiving notice, landlords have no opportunity to dispute the grounds for enforcement or discretion to forgo an eviction filing. This is true even if the landlord has reason to believe the renter household is innocent of the allegations, the victim of the alleged activity, or that the interaction with emergency services or the offending calls stemmed from gender-based violence, a disability-related need, or another good cause reason to seek help. *See id.* at 1467.15(a).

37.     Landlords face a daily fine between $150 and $750 for not filing an eviction when Richton Park demands it. *Id.* at 1467.15; 1467.99.

38.     The Ordinance authorizes Richton Park's Director of Community Development to enforce the ordinance.  *Id.* at 1467.16.

39.     However, on information and belief, the Richton Park Police Department enforces the Ordinance by contacting landlords about alleged violations and demanding the landlord file an eviction without formal written notice.

40.     On information and belief, Richton Park has no further written policies or training materials beyond the Ordinance language.

41.     The lack of protections in the Ordinance and in Richton Park's implementation of the Ordinance create an enforcement regime where the Richton Park Police Department orders landlords to initiate evictions without regard for the tenant's due process rights and without any training on the civil rights implications of these actions.

**C.      Diamond Jones's Rental History and Connection to Richton Park**

42.     Ms. Jones moved to the Village of Richton Park in November 2018.  She, her two daughters (currently, ages four and six), and her younger brother (currently, age 17), rented a single-family home at 4220 Greenbrier Lane, Richton Park, IL 60471 ("4220 Greenbrier") from Castle Ridge Builders.

43.     Ms. Jones's mother, Debrasha Smith ("Ms. Smith"), split her time between Ms. Jones's home in Richton Park and the home of Ms. Smith's elderly mother in Wisconsin.  While in Richton Park, Ms. Smith provided vital childcare support to Ms. Jones, traveling to Wisconsin periodically to help care for her mother who was managing a brain cancer diagnosis.  When Ms. Smith was out of town caring for her mother, Ms. Jones relied on other family members who lived nearby for her childcare needs.  Because of Ms. Smith's frequent travel to Wisconsin, her younger son stayed with Ms. Jones so that he could complete high school.

44.     Below is a true and correct photograph of Ms. Jones's former home in Richton Park, taken on Monday, September 4, 2023:



45.     Ms. Jones and her family quietly enjoyed renting this house for over three and a half years.  The house had three large bedrooms and spacious living areas.  It had a large, gated backyard with a patio, where Ms. Jones set up a trampoline and an above-ground swimming pool.  Her children loved to spend time in the backyard and Ms. Jones appreciated that she could watch the children from the kitchen as they played.  Ms. Jones and her children had many friends in the neighborhood and the house was close to the local elementary school and Ms. Jones's place of work.

46.     One of Ms. Jones's brothers and his family lived on the same street and the children's father lived less than 10 minutes away.  This meant that Ms. Jones had help getting her older child to and from school on workdays and always had backup childcare help nearby.  Ms. Jones's home was also a hub for her extended family.  Her children visited with their cousins daily and Ms. Jones hosted family gatherings to celebrate every holiday and birthday.  She took pride in

her home and enjoyed setting up elaborate decorations to mark the holidays. Ms. Jones was active in the community and, through her work, organized support for the local food pantry.

47. As part of the leasing process, Ms. Jones executed a one-page document titled "Crime-Free Housing Lease Addendum," which was countersigned by Castle Ridge Builders' employee Michelle Rucker ("Ms. Rucker"). A true and correct copy of Ms. Jones's lease agreement and Crime-Free Housing Lease Addendum dated November 3, 2018, is attached to this Complaint as Exhibit A.

48. The Village required Ms. Jones to sign and submit the Crime-Free Housing Lease Addendum before the Village turned on her water at 4220 Greenbrier.

49. Each month, Ms. Jones paid rent to Castle Ridge Builders, she remained in good standing, and Castle Ridge Builders automatically renewed her lease in 2019, 2020, and 2021. Ms. Jones had no intention of moving and hoped to remain at 4220 Greenbrier for the foreseeable future. On information and belief, Castle Ridge Builders had no reason to discontinue renting to Ms. Jones until the Village required that they terminate her tenancy.

50. Ms. Jones has never been evicted or, on information and belief, had an eviction action filed against her.

**D. Ms. Jones and Her Family Are the Victims of Multiple Crimes, Days in a Row**

51. In June 2022, Ms. Smith was in the midst of an extended stay in Richton Park, providing daily childcare for her grandchildren while they were home for summer break.

52. On June 24, 2022, Ms. Jones was at work while Ms. Smith stayed home with her grandchildren and youngest son at 4220 Greenbrier.

53. Ms. Smith was playing in the backyard with her granddaughters and went into the house to grab some clothes. Before she could get back outside, her granddaughters ran into the house screaming that they heard a loud noise.

54.     When Ms. Smith went back outside, she saw her son, who had run out of the house when he heard gunfire.  He told Ms. Smith that someone had been shot down the street.  Both Ms. Smith and her son called the police to report the shooting and were informed by the operator that they had already received calls and were sending emergency responders.

55.     Ms. Smith, who has worked as a certified nurse assistant for 23 years, ran down the street to provide medical aid to the young person who had been shot.  She attempted to calm him down and applied pressure to his wound until the ambulance arrived and emergency responders took over his care.

56.     Richton Park police officers also arrived, and Ms. Smith spoke with them about what happened after her family heard the gunfire.  Police Chief Demitrius Cook ("Police Chief Cook" or "Chief Cook") gave Ms. Smith his business card and said to call him anytime. A true and correct copy of Chief Cook's business card is attached to this Complaint as Exhibit B.

57.     On June 25, 2022, the day after the shooting on Greenbrier Lane, Ms. Jones and her mother learned that individuals on social media were identifying Ms. Jones's home as the house that reported the shooting to the police and making threats against the occupants of 4220 Greenbrier.  Alarmed, Ms. Smith called 9-1-1 to report that the family was receiving online threats and requested help.  Richton Park Police Officer Bowen came to the house and gave Ms. Smith his business card.  A true and correct copy of Officer Bowen's business card is attached to this Complaint as Exhibit C.

58.     Days later, the online threats against Ms. Jones and her family became a reality.  On June 27, 2022, while Ms. Jones was at work and Ms. Smith was caring for Ms. Jones's daughters at their home, someone fired gunshots at 4220 Greenbrier.  Ms. Smith heard gunshots and glass breaking and fell to the floor until the incident was over.  Once the shooting stopped, she was able

to check whether the children were harmed. The shooting caused damage throughout Ms. Jones's home, with bullet holes and fragments spraying multiple rooms, including the girls' bedroom. True and correct copies of the bullet holes from the gunshots fired at 4220 Greenbrier dated June 27, 2022, are attached to this Complaint as Exhibit D.

59. In shock, Ms. Smith again called 9-1-1 to report the shooting and seek emergency assistance. Police officers, including Police Chief Cook, arrived at the scene after the shooting. On information and belief, Police Chief Cook asked why Ms. Smith did not call him directly after the shooting, and Ms. Smith told him that she had tried, but he did not answer.

60. On information and belief, after the June 27, 2022, shooting, the Richton Park Police Department started parking a patrol car in front of 4220 Greenbrier.

**E. Richton Park Enforces its CFO Against Diamond Jones**

61. On July 5, 2022, still reeling from the shootings, Ms. Jones received another blow: her landlord served her with a 10-day notice terminating her tenancy.

62. Titled "Notice of Termination," the notice stated that the lease at 4220 Greenbrier was being terminated for "violation of crime-free addendum." The notice was signed by a representative of Castle Ridge Builders and dated July 5, 2022. On information and belief, the notice was posted on the door of 4220 Greenbrier. A true and correct copy of the 10-day notice that Ms. Jones received dated July 5, 2022, is attached to this Complaint as Exhibit E.

63. Confused and distressed, Ms. Jones called Ms. Rucker of Castle Ridge Builders to try to understand why Ms. Jones had received this notice. Ms. Rucker indicated that she did not have any information about the basis of the Village's decision, but that enforcement of the Crime-Free Ordinance was typically triggered by too many calls for police service. She recommended that Ms. Jones try to dispute the finding that she violated the Ordinance. Ms. Rucker told Ms. Jones

that she should try to get the call log from the police department and explain the circumstances that led to the police contact.

64.　　Based on Ms. Rucker's recommendation, Ms. Jones went in person to the Richton Park police station. She asked the receptionist for the Richton Park Police Department for more information and explained she wanted to clear up what she assumed was confusion about her identity and involvement with the shootings.　The receptionist provided a copy of the 9-1-1 call log linked to Ms. Jones's address but said the Department could provide no further assistance.　She recommended that Ms. Jones try to speak with someone on staff at the Village about the issue.　A true and correct copy of the 9-1-1 call log for 4220 Greenbrier that the receptionist gave Ms. Jones is attached to this Complaint as Exhibit F.

65.　　While still at the station, Ms. Jones reviewed the call log and noticed several calls that were unfamiliar to her. She asked the receptionist about this issue and questioned the accuracy of the 9-1-1 call log. The receptionist responded that the log included all calls in a general area around 4220 Greenbrier.　Later, Ms. Jones underlined the 9-1-1 calls for 4220 Greenbrier that she recognized.

66.　　Because the administrative offices of the Village of Richton Park are in the same building as the police station, Ms. Jones then sought out a representative of the Village to ask for help. She spoke briefly to a representative of the Village and explained the situation.　The individual offered no assistance and told Ms. Jones that she needed to take the issue up with the police department.

67.　　Exasperated, Ms. Jones left the building and went to sit in her car in the parking lot. From there, she called Chief Cook, hoping that he might be able to clear up the confusion and assist her.　Chief Cook refused to speak with Ms. Jones regarding the eviction.　He told her that

the issue was out of his hands and that she needed to talk to her landlord and the "lady at the Village," without clarifying which individual he meant.

68.     Convinced that there must be some mistake, and attempting to follow through on Chief Cook's recommendation, Ms. Jones then went home and wrote an email to Richton Park Village Manager Regan Stockstell.  Ms. Jones requested help, explaining that she and her family had been victims of the recent shootings on her street.  She indicated that her landlord did not wish to evict her but felt compelled to end her tenancy because of the penalties they faced under Richton Park's "Crime-Free" Ordinance.  Manager Stockstell never responded. A true and correct copy of the email that Ms. Jones sent Manager Stockstell on July 11, 2022, is attached to this Complaint as Exhibit G.

69.     Ms. Jones also called Ms. Rucker again to report back on her efforts and see if she and her landlord could work out a solution.  Ms. Rucker's tone had shifted noticeably.  She told Ms. Jones, in effect, that she did not want to evict Ms. Jones, but that the Village was requiring it and the landlord's hands were tied.  Ms. Rucker told Ms. Jones that there was nothing Castle Ridge could do to avoid an eviction.

70.     Despite her multiple attempts, Ms. Jones received no further information or guidance on how to dispute the enforcement action from the Village, the police department, or her landlord. She knew that having an eviction filing on her record would likely inhibit her ability to find a new place to live, and with no guarantee that she could get an attorney to help her fight the eviction, she felt she had no choice but to move.

71.     After negotiating a short extension to allow her to pack and move some of her family's possessions into storage, Ms. Jones and her family were forced to abruptly move from their home of almost four years at great personal, financial, and emotional cost.

**F.     The Impetus for the Village's Actions**

72.     After being forced out of her Richton Park home because members of her household called the police to report crime and seek help, Ms. Jones wanted to understand what had happened. Through counsel, she started investigating the Village's actions in response to the shootings on Greenbrier Lane.

73.     A Freedom of Information Act Request submitted in August 2022 revealed how Ms. Jones, a victim of gun violence who called the police for help, became a target for enforcement under Richton Park's Ordinance.

74.     On June 28, 2022, Richton Park Trustee Valerie Babka ("Ms. Babka") emailed Police Chief Cook, stating, in full: "Did you find out yet if we can apply the crime free to the shootings on greenbrier [sic] I believe we can because of past evection [sic]. Please let us know. The residents that live over there need a peace of mind[.]" A true and correct copy of Ms. Babka's email to Chief Cook dated June 28, 2022 is attached to this Complaint as Exhibit H.

75.     On June 29, 2022, the day after Chief Cook received the message from Ms. Babka, he emailed Castle Ridge Builders, Ms. Jones's landlord, stating that 4220 Greenbrier had violated the Crime-Free Housing Ordinance and that the residents of 4220 Greenbrier "have placed the neighborhood in danger on several occasions."  Referencing the shootings that occurred on Greenbrier Lane, Chief Cook stated that "action is required."  Six *minutes* later, Castle Ridge Builders responded to Chief Cook confirming that they would serve notices and start the eviction process.  A true and correct copy of the email exchange between Castle Ridge Builders and Chief Cook dated June 29, 2022, is attached to this Complaint as Exhibit I.

76.     On information and belief, the basis of Chief Cook's decision was his review of the 9-1-1 call log for the area around Ms. Jones's home.  On information and belief, without confirming that the calls on the log even originated at Ms. Jones's residence, and without

investigating the circumstances that led to each call, he determined that the family's contacts with law enforcement constituted a violation of the Village's Ordinance.

## INJURY TO PLAINTIFF

77.     As a direct result of Richton Park's determination that Ms. Jones violated its Crime-Free Housing Ordinance ("Ordinance"), Ms. Jones suffered substantial injuries, including emotional distress.

78.     But for Richton Park's determination that Ms. Jones violated its Ordinance, Castle Ridge Builders would not have sent Ms. Jones and her daughters a 10-day eviction notice on July 5, 2022 and their family would have continued renting 4220 Greenbrier.  Any and all steps Castle Ridge Builders took to terminate Ms. Jones's tenancy are directly and exclusively traceable to the Village's enforcement of its Ordinance.

79.     When Richton Park enforced its Ordinance against her, it forced Ms. Jones to move quickly to avoid an eviction filing.  Ms. Jones had no plans to move and had not saved for application fees, move-in fees, a security deposit, or moving costs, but she and her two children had no other residence or place to go.  When she began looking for a new place to live, there were few available rentals she could afford, and she discovered she was competing against many other prospective tenants.  Ms. Jones struggled to find options that were safe, decent, and affordable. Ultimately, with time running out and no other option, Ms. Jones was forced to settle for a less suitable and desirable—but more expensive—rental property.  She had to rely on the charity of her coworkers to cover some upfront moving costs and, due to the short timeline, had to take paid time off to pack what she could of her family's belongings and move.

80.     Ms. Jones and her children moved from 4220 Greenbrier—a single-family home with a yard for $1,225 a month—to a smaller, third-floor, walk-up apartment without a yard that

costs $1,575 a month. With less space, Ms. Jones had to leave behind personal possessions, replace items that would not fit in the new space, and start paying for a monthly storage unit.

81.     Leaving 4220 Greenbrier also made it more difficult to manage her childcare needs. In Richton Park, Ms. Jones's family lived within walking distance of 4220 Greenbrier and often helped care for her children. Her new apartment was much farther from her family and in a more densely populated area with limited parking, making it difficult for her family to visit or provide in-home childcare.

82.     As a result of the Village's enforcement action against her, Ms. Jones endured extreme emotional distress, including but not limited to: fear, worry, stress, anxiety, sadness, and embarrassment. Ms. Jones feared becoming homeless and losing her job. She worried about uprooting her children and moving them away from their family. She felt embarrassed when she had to explain to her neighbors and family why she and her family were abruptly packing up and moving out. She mourned the loss of the home and community she loved.

83.     Ms. Jones's daughters also experienced emotional and mental anguish over the abrupt move from 4220 Greenbrier. Ms. Jones's daughters were upset and confused when they moved. For weeks after the family moved into their new residence, Ms. Jones's youngest daughter refused to take off her shoes and coat at the apartment because it was not "home." She would sit on the floor and cry, not understanding why they were in this new place.

84.     The move diminished Ms. Jones's and her children's quality of life in several ways, causing sadness, frustration, and anger. Because they now have downstairs neighbors, Ms. Jones worries about allowing the children to run, jump, play, and make noise the way they used to in their Richton Park home. Ms. Jones's children do not go outside to play as frequently because their apartment is on the third floor and the windows do not overlook any place for the children to

play, like their old yard did.  Once surrounded by family daily, Ms. Jones and her children feel isolated and experience sadness every time a holiday passes and they cannot host a family celebration or decorate the outside of their home, an activity they had been known to do for years.

85.     As a result of Richton Park's actions, Ms. Jones lost trust in the Village of Richton Park and the Richton Park Police Department.  Ms. Jones does not feel safe and worries that if she is the victim of a crime, she will not receive support.  Richton Park's enforcement action has deterred and continues to deter her from calling the police for emergency services again.

86.     Richton Park's enforcement action inflicted significant harm on Ms. Jones and served no legitimate purpose.

## CONSTITUTIONAL VIOLATIONS

### <u>COUNT I</u>
### 42 U.S.C § 1983 – FIRST AMENDMENT – RIGHT TO PETITION

87.     Ms. Jones incorporates by reference the allegations in the preceding paragraphs as though set forth at length herein.

88.     The First Amendment to the U.S. Constitution guarantees the right to freedom of speech and the right to petition the Government for redress of grievances.  U.S. Const. amend. 1.

89.     Under the First Amendment's "right to petition" clause, communications to law enforcement—including (1) reporting criminal activity and (2) filing a complaint with law enforcement—are constitutionally protected activities.

90.     The First Amendment prohibits restrictions on the expression of information or speech, including punishment for reporting crime, requesting police assistance, or making complaints to the police.

91.     Defendant is a "person" under 42 U.S.C. § 1983.

92.    Defendant's enforcement of the Ordinance against Ms. Jones and her family for "an unreasonably high number of calls for police service" to report criminal activity directly violated Ms. Jones's right to petition the Government to redress grievances.

93.    By having renters face potential eviction for contacting the Richton Park Police Department, the Ordinance discourages renters from calling law enforcement to request police or emergency assistance, report crime, and/or make complaints, thus preventing renters from speaking out on matters of public concern.

94.    Ms. Jones and her family's communications to the police are activity protected by the First Amendment.

95.    Ms. Jones and her family faced eviction for speaking out on matters of public concern.

96.    The actions of Defendant occurred while acting under the color of state law.

97.    The acts and omissions of Defendant were engaged in pursuant to the customs, policies, and practices of Defendant Richton Park, namely through the passage and enforcement of the Crime-Free Housing Ordinance.

98.    Defendant engaged in this conduct willfully, intentionally, and in reckless disregard of Ms. Jones's constitutional rights.

99.    Defendant's actions and/or omissions caused, directly, and proximately, Ms. Jones to suffer damages.

100.    The Ordinance, particularly as applied to victims of crime requesting emergency service and those reporting on crime, does not advance any compelling government interest and is not narrowly tailored to justify the infringement of the fundamental right to call the police.

101.    Accordingly, the Ordinance violates the First Amendment of the U.S. Constitution.

## COUNT II
## 42 U.S.C. § 1983 – FIRST AMENDMENT – RETALIATION FOR FREE SPEECH AND EXPRESSION

102.     Ms. Jones incorporates by reference the allegations in the preceding paragraphs as though set forth at length herein.

103.     Defendant is a "person" under 42 U.S.C. § 1983.

104.     Ms. Jones and her family's communications are activities protected by the First Amendment.

105.     Ms. Jones and her family's speech and expression were related to matters of public concern: reporting on crime and requesting police service.

106.     Defendant's enforcement of the Ordinance against Ms. Jones and her family for "an unreasonably high number of calls for police service" to report criminal activity directly violated Ms. Jones's right to freedom of speech.

107.     Defendant responded to Ms. Jones and her family's First Amendment-protected activity with retaliation by requiring Ms. Jones to be evicted, causing the early termination of her lease and fear of imminent homelessness.

108.     Defendant's retaliatory actions were substantially motivated by Ms. Jones's exercise of her First Amendment rights.

109.     By the decision to require eviction two days after reporting a crime, Defendant sought to punish Ms. Jones for expressing her First Amendment rights, silence her future speech and restrict her freedom of expression, as well as the future speech and expression of others. Defendant's retaliatory actions would chill a person of ordinary firmness from engaging in such First Amendment-protected activity.

110.     The acts and omissions of Defendant were engaged in pursuant to the customs, policies, and practices of Defendant Richton Park, namely through the passage and enforcement of the Ordinance.

111.     Defendant engaged in this conduct knowingly and in reckless disregard of Ms. Jones's constitutional rights.

112.     At all times relevant to this Complaint, Defendant was acting under the color of state law.

113.     Defendant's actions and/or omissions caused, directly and proximately, Ms. Jones to suffer damages.

114.     Accordingly, the enforcement of the Ordinance against Ms. Jones violated the First Amendment of the U.S. Constitution.

<u>**COUNT III**</u>
**42 U.S.C. § 1983 – FIRST AMENDMENT – OVERBREADTH AND VAGUENESS**

115.     Ms. Jones incorporates by reference the allegations in the preceding paragraphs as though set forth at length herein.

116.     Defendant is a "person" under 42 U.S.C. § 1983.

117.     In order to lease residential rental property in the Village of Richton Park, landlords and tenants are required to comply with the provisions of the "Crime-Free" Ordinance as outlined under Richton Park Municipal Code Sections 1467.12 and 1467.15(a).

118.     The provisions of the Ordinance set forth in Richton Park Mun. Code 1467.12 outline the various activities renters shall not engage in. One such activity authorizes and requires landlords in Richton Park to evict renters where anyone associated with a renter household participates in any alleged criminal activity or "cause[s] an unreasonably high number of calls for

police service," excluding only calls related to domestic violence, sexual violence, or disability-related needs, which are exemptions required by Illinois law. Richton Park Mun. Code 1467.12(c)(1); *see also* 65 ILCS 5/1-2-1.5.

119. The Ordinance is sweeping in the breadth of included activities and covers a substantial number of activities unrelated to any legitimate or compelling governmental interest, making the Ordinance unconstitutional on its face. The list of activities is so broad that someone who calls the police "an unreasonably high number" of times as a result of being the victim of a crime would fall in this category and be subject to eviction.

120. The Ordinance is further broadened by including a catch-all phrase that gives the Village the discretion to add covered activities ex post facto. It reads, "Tenant, any member of the tenant's household, a guest or association (whether invited or uninvited) of the tenant or a member of the tenant's household, or any person in the unit or guest of tenant on common grounds, shall not: Cause an unreasonably high number of calls for police service **including, but not limited to** . . . other public complaints." Richton Park Mun. Code 1467.12(c)(1) (emphasis added).

121. The plain language of the Ordinance is constitutionally flawed because, at the Village's discretion, it requires the eviction of tenants seeking help from the police or reporting criminal activity. The Ordinance thus chills tenants' constitutionally protected right to call 9-1-1.

122. This expansive list of eviction-eligible activities is what allowed Defendant to find that Ms. Jones violated the Ordinance as outlined under Richton Park Municipal Code 1467.12(c)(1) by calling the police, and to have her landlord serve her an eviction notice or risk daily fines between $150 and $750 as outlined under Richton Park Municipal Code 1467.15 and 1467.99.

123.    The Ordinance is not narrowly tailored to advance a compelling governmental interest. Its provisions are vague and substantially overbroad and permit evictions based on calling for emergency services, in violation of the First Amendment.

124.    Accordingly, the Ordinance is unconstitutional on its face and as applied to Ms. Jones.

125.    The acts and omissions of Defendant were engaged in pursuant to the customs, policies, and practices of Defendant Richton Park, namely through the passage and enforcement of the overbroad Ordinance.

126.    Defendant's actions and/or omissions taken in accordance with this overbroad ordinance caused, directly and proximately, Ms. Jones to suffer damages.

127.    Defendant engaged in this conduct knowingly and in reckless disregard of Ms. Jones's constitutional rights.

128.    At all times relevant to this Complaint, Defendant was acting under the color of state law.

129.    Accordingly, the Ordinance violates the First Amendment of the U.S. Constitution.

## <u>COUNT IV</u>
### 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT – DUE PROCESS CLAUSE

130.    Ms. Jones incorporates by reference the allegations in the preceding paragraphs as though set forth at length herein.

131.    The Fourteenth Amendment to the U.S. Constitution provides that no person shall be deprived of "life, liberty or property without due process of law."  U.S. Const. amend. 14.

132.    The Due Process Clause secures from state infringement those fundamental rights and liberties that are deeply rooted in our nation's history and traditions and that are implicit in the concept of ordered liberty.

133.    Defendant is a "person" under 42 U.S.C. § 1983.

134.    Ms. Jones had a fundamental property interest in her lease with Castle Ridge Builders.

135.    Ms. Jones had a fundamental property interest in her home at 4220 Greenbrier Lane, Richton Park, Illinois.

136.    The Ordinance does not provide adequate legal procedures to protect against the deprivation of Ms. Jones's property interests.  The Ordinance does not require any notice to be given to the tenant regarding violations of the Ordinance, nor does it give the tenant an opportunity to contest Defendant's discretionary application of the Ordinance to instances where tenants have called the police a number of times due to being victims of criminal activity.

137.    Defendant deprived Ms. Jones of her property interest by determining that she violated the Ordinance without adequate procedural protections, such as notice or an opportunity to be heard—either before or after the Village rendered a decision.  Moreover, no impartial decision-maker ever assessed the facts underlying the enforcement action against Ms. Jones.

138.    Defendant did not inform Ms. Jones that the Ordinance had been triggered or provide any information about the evidence against her.  She had no opportunity to learn about, let alone contest, the Village's determination that she had violated the Ordinance.  In fact, Defendant afforded Ms. Jones no process whatsoever before notifying her landlord that they were required to initiate an eviction.  The first and only notice Ms. Jones received was from her landlord informing her that her tenancy had been terminated due to her violation of the Ordinance.

139.    Pursuant to its Ordinance, Defendant required that Castle Ridge Builders terminate its lease with Ms. Jones.  Police Chief Cook made clear in his communication with Castle Ridge

Builders that "action was required." This directive left no room for Castle Ridge Builders to continue renting to Ms. Jones without risking penalties for failing to comply with the Ordinance.

140. Defendant's enforcement of its Ordinance against Ms. Jones after her family sought emergency assistance and reported crime to the police infringed on Ms. Jones's fundamental rights. The actions of Defendant shock the conscience. Ms. Jones's fundamental property interest was violated when her lease was terminated pursuant to an established state policy or procedure—not a random, unauthorized act. Pursuant to its Ordinance, Defendant required Castle Ridge Builders to evict Ms. Jones for violating the Crime-Free Ordinance by causing an "unreasonably high" number of calls for police services.

141. As written, the limited process outlined in Defendant's Ordinance entirely excludes renters—those directly impacted by enforcement actions and most likely to have information needed to refute an alleged violation. This creates a high risk of erroneous deprivation of renters' property interests.

142. Accordingly, both on its face and as applied to Ms. Jones, Defendant's Ordinance violates her fundamental rights under the Due Process Clause of the Fourteenth Amendment.

## COUNT V
## DECLARATORY RELIEF

143. Ms. Jones incorporates by reference the allegations in the preceding paragraphs as though set forth at length herein.

144. Ms. Jones is entitled to a declaratory judgment pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202 declaring (a) the Ordinance unconstitutional facially and as applied; and (b) Defendant violated Ms. Jones's First Amendment rights and procedural Due Process rights and is liable under 42 U.S.C. § 1983 to Ms. Jones. Defendant acted knowingly and under color of law in all these improper and unlawful actions.

145.    Ms. Jones's damages include economic damages, including but not limited to increased rent costs, moving costs, and storage unit rental costs; noneconomic damages, including but not limited to mental anguish, distress, humiliation, anxiety, embarrassment, and fear; in amounts to be proven at trial.

146.    Defendant is liable for compensatory damages, attorneys' fees and costs. Defendant's conduct was the proximate and actual cause of the loss, damage, injury, and deprivation of rights to Ms. Jones.

## DEMAND FOR JURY TRIAL

147.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues triable as of right.

## PRAYER FOR RELIEF

Ms. Jones requests that the Court:

A.      Declare that Richton Park's Crime-Free Housing Ordinance—both on its face and as applied to Ms. Jones—violates the First Amendment and Fourteenth Amendment;

D.      Award Plaintiff compensatory damages in an amount to be determined by the jury that would fully compensate Plaintiff for injuries caused by Defendant's conduct alleged herein;

E.      Award Plaintiff attorneys' fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988 and all other applicable federal laws;

F.      Award such further legal and equitable relief as the Court may deem just and proper.

Dated: November 8, 2023                    Respectfully submitted,

                                           */s/ Patrick Simonaitis*
                                           George Lombardi
                                           Patrick Simonaitis
                                           Michael Trucco
                                           Savannah Murin
                                           **Winston & Strawn LLP**
                                           35 West Wacker Drive

Chicago, IL 60601
(312) 558-5600
GLombard@winston.com
PSimonaitis@winston.com
MTrucco@winston.com
SMurin@winston.com

Emily Coffey
Micaela Alvarez
MacKenzie Speer
Aneel L. Chablani
**Chicago Lawyers' Committee for Civil Rights**
100 North LaSalle Street, Suite 600
Chicago, IL 60602
ecoffey@clccrul.org
malvarez@clccrul.org
mspeer@clccul.org
achablani@clccrul.org

*Counsel for Diamond Jones*